NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 2 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

THERMOLIFE INTERNATIONAL, LLC;
MUSCLE BEACH NUTRITION, LLC,

Plaintiffs-Appellants,

v.

BPI SPORTS, LLC,

Defendant-Appellee.

No.    21-15339

D.C. No. 2:20-cv-02091-SPL

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Argued and Submitted January 13, 2022
Pasadena, California

Before:  WALLACE and FRIEDLAND, Circuit Judges, and LASNIK,** District
Judge.

Plaintiffs-Appellants ThermoLife and Muscle Beach appeal from the district

court's order dismissing their case for lack of standing.  We have jurisdiction under

28 U.S.C. § 1291.  "We review the question of standing de novo."  *S.D. Myers, Inc.*

---

*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**        The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

*v. City & County of San Francisco*, 253 F.3d 461, 474 (9th Cir. 2001). We also review de novo rulings on motions to dismiss for failure to state a claim. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). Because we conclude that Plaintiffs have failed to plead a cause of action adequately under the Lanham Act, we affirm the district court's dismissal order.

In order for Plaintiffs to succeed in federal court, they must satisfy both Article III standing and the elements of the cause of action they attempt to assert.

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000), *citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss," the court presumes "that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561, *quoting Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). We disagree with the district court that Plaintiffs lacked Article III standing, but we affirm on the grounds that Plaintiffs have not pleaded sufficient facts to satisfy the elements of a cause of action under the Lanham Act.

In this case, ThermoLife and Muscle Beach brought an action against

2

Defendant-Appellee BPI, alleging claims of (1) false advertising under the Lanham Act, (2) common law unfair competition, and (3) violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Although Plaintiffs may have alleged sufficient general factual allegations to satisfy Article III standing at the pleading stage, they fall short of alleging sufficient facts to plead the elements of a cause of action under the Lanham Act.[1]

In contrast to Article III standing, the Lanham Act does not allow "all factually injured plaintiffs to recover." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). Instead, the "the zone-of-interests test and the proximate-cause requirement supplies the relevant limits on who may sue." *Id.* at 134. Specifically, "to come within the zone of interests in a suit for false advertising under [15 U.S.C.] § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131–32. Under the proximate-cause requirement, a plaintiff "must show economic or reputational injury flowing directly from the

---

[1] Because the district court dismissed for failure to assert a commercial injury the claims of unfair competition and violation of Florida Deceptive and Unfair Trade Practices Act for the same reasons as the analysis for the Lanham Act, the analysis under the Lanham Act false advertising claim applies to all three claims. After all, claims of unfair competition under state statutory and common law are substantially congruent to claims made under the Lanham Act. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). Moreover, a FDUTPA claim requires "actual damages" caused as a result of a defendant's unfair conduct. *See Hanson Hams, Inc. v. HBH Franchise Co., LLC*, No. 03-61198CIV, 2004 WL 5470401, at *8 (S.D. Fla. Dec. 21, 2004). The parties also do not dispute that the same analysis applies to all three claims.

deception wrought by the defendant's advertising[, which] occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. Thus, we have generally held that "when [a] plaintiff competes directly with [a] defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011). For the following reasons, we hold that both ThermoLife and Muscle Beach failed to plead sufficient facts to satisfy the proximate-cause requirement necessary to plead a cause of action under the Lanham Act.

We first address ThermoLife's allegations, which are too speculative to establish proximate causation. At the outset, ThermoLife operates at a different level of the supply chain than BPI. ThermoLife markets and sells certain nitrate and amino acid compounds (including BCAAs) for increasing athletic performance, such as for use in sports nutrition supplements. Instead of manufacturing dietary supplements itself, it licenses the use of its ingredients and patented technology to other companies that produce dietary supplements. On the other hand, BPI produces its own dietary supplements. To be sure, direct competition "is not required for proximate cause," if a plaintiff can show that any false advertising "necessarily injured" its business. *Lexmark*, 572 U.S. at 138–39. For instance, proximate causation may be adequately alleged when "there is likely to be something very close to a 1:1 relationship between" a plaintiff's lost sales and the sales diverted to a

4

defendant. *Id.* at 139.

But ThermoLife's complaint did not plead facts showing anything like a 1:1 relationship between ThermoLife's lost sales or licensing fees and any potential sales diverted to BPI due to its false advertising. Instead, ThermoLife's allegations are very different than those alleged by the plaintiff in *Lexmark*, who sufficiently alleged a "1:1 relationship between the number of refurbished Prebate cartridges sold (or not sold) by the remanufacturers and the number of Prebate microchips sold (or not sold) by [plaintiff]." *Id.* There, the plaintiff "adequately alleged proximate causation by alleging that it designed, manufactured, and sold microchips that both (1) were necessary for, and (2) had no other use than, refurbishing Lexmark toner cartridges." *Id.* Thus, "if the remanufacturers sold 10,000 fewer refurbished cartridges because of [the defendant's] false advertising, then it would follow more or less automatically that [the plaintiff] sold 10,000 fewer microchips for the same reason." *Id.* at 140. Here, ThermoLife does not allege that it produces ingredients that are necessary for, and had no other use than, producing the exact same dietary supplement made by BPI. Indeed, ThermoLife's complaint shows that there are many competing companies in the dietary supplement market. ThermoLife's allegations of direct competition between dietary supplements containing ThermoLife ingredients and BPI's dietary supplements are speculative at best. For instance, ThermoLife alleges that products containing its ingredients have similar

health benefits or were sold side-by-side on websites to BPI's product. In a dietary supplement market that is robust with competitors and different products, this is insufficient to show that sales captured by BPI leads to a direct loss of dietary supplements containing ThermoLife ingredients. Moreover, even if some of the dietary supplement products containing ThermoLife ingredients were direct competitors with BPI's products, ThermoLife has not alleged that its licensing arrangement causes it to lose fees proportionally to those products' lost sales, similar to the 1:1 relationship between microchips and ink cartridges in *Lexmark*. *Cf. id.* Therefore, ThermoLife failed to show proximate causation by alleging any injury "flowing directly" from the alleged false advertising of BPI. *Id.* at 133.

We next turn to Muscle Beach's allegations. Unlike ThermoLife, Muscle Beach alleges that it directly competes with BPI. Muscle Beach is a seller of sport nutrition supplement products that rely on ThermoLife's patented technology. One of the products sold by Muscle Beach is CRTN-3, a sports nutrition product marketed as a muscle builder. Another product sold by Muscle Beach is PRE-TRAIN, which is a sports nutrition product marketed as a pre-workout product. But Muscle Beach failed to allege any facts that show consumers consider its products to be substitutes with BPI's products. Muscle Beach mainly alleges that the products are in direct competition because they use similar language to describe their health benefits, such as boosting athletic performance and endurance, supporting muscle

6

growth, and speeding recovery. The fact that the products use similar language, however, is insufficient to show direct competition. Moreover, Muscle Beach did not provide any photographs of its products being listed side-by-side with BPI products or provide any customer review stating a preference for one over the other.

Muscle Beach's only other evidence for direct competition seems to be the fact that BPI has sued Muscle Beach in a different case before the Southern District of Florida. There, BPI filed a complaint that alleges several Muscle Beach products compete directly with certain BPI products. Notwithstanding the fact that the BPI products at issue in that case are creatine and nitrate-based products that are entirely different from the BCAA products at issue here, we are not required to consider the briefs and decisions of that court. Moreover, the district court here declined to apply judicial estoppel or take judicial notice of the Southern District of Florida case because Plaintiffs "did not fully address the judicial estoppel factors" and the court "[did] not find Plaintiffs' single argument in favor of estoppel convincing on the merits." *ThermoLife Int'l LLC v. BPI Sports LLC*, No. CV-20-02091-PHX-SPL, 2021 WL 661981, at *3 (D. Ariz. Feb. 19, 2021). Since Plaintiffs have not challenged on appeal the district court's holding on this issue, we also decline to take judicial notice of the Southern District of Florida case as evidence for direct competition.

Because Plaintiffs failed to plead "an injury to a commercial interest in sales

or business reputation proximately caused by the defendant's misrepresentations," they failed to satisfy the elements of a cause of action under the Lanham Act. *Lexmark*, 572 U.S. at 140. For similar reasons, Plaintiffs failed to meet the requirements for their common law unfair competition and Florida Deceptive and Unfair Trade Practices Act claims.

**AFFIRMED**.